Plaintiffs and their father, since deceased, executed certain gravel deeds or leases purporting to convey to defendants all the sand and gravel on a tract of land owned by plaintiffs in Grant Parish, Louisiana, and providing for payment of four cents per yard royalty on gravel mined from the premises. Suit was filed in Grant Parish in which plaintiffs' prayed for an annulment of the alleged gravel and sand deeds or leases and for a money judgment covering the value of sand removed.
The District Court rejected plaintiffs' demands to have the alleged sales or leases annulled but gave judgment for $1,680.00, representing an allowance of four cents per yard for the 42,000 cubic yards of sand removed from the property.
The defendants appealed to the Court of Appeal. This appeal was transferred to the Supreme Court, 24 So.2d 263, and subsequently by that Court, 37 So.2d 712, returned to the Court of Appeal.
The following instrument was signed by the plaintiffs and their father, since deceased:
"State of Louisiana
Parish of Rapides
"Be It Known That on this, the 8 day of July, A.D., 1939 before me Lamar Polk, a Notary Public in and for the Parish of Rapides, State of Louisiana, duly qualified in accordance with law, personally came and appeared
X
X Hilda Coston
X Laura Williams
X Vera Kelley
X R. E. Walker
X Zelma Walker
all residents of the Parish of Grant, State of Louisiana, who declared unto me, Notary, in the presence of the undersigned competent witnesses, that for and in consideration of the price and sum of Twenty-five no/100 ($25.00) Dollars, cash in hand paid, the receipt of which is hereby acknowledged they have bargained and sold, and do by these presents bargain, sell, transfer and convey, and deliver, with full warranty of title and subrogation to all rights and action in warranty they may have against former owners, and free from all encumbrances, unto Charles E. Kerlin, married whose wife, born Miss Lula Sills still lives and resides with him, a resident of Rapides Parish, Louisiana, here present, accepting and purchasing for himself, his heirs and assigns, and acknowledging possession and delivery thereof, the following property, to-wit:
"All of the sand and gravel on, in or under the following described property in the Parish of Grant, State of Louisiana to-wit:
"E 1/2 of NE 1/4 of Section Seven (7) T. 5 N. R. 1 W. together with full rights of engress and egress for the purpose of removing the same.
"In addition to the above consideration, vendee shall pay vendors four cents (4¢) per cubic yard for all gravel mined and removed from said property, said payment to be made weekly for all gravel removed during previous week.
"To have and to hold the said property unto said purchaser and unto heirs and assigns forever. Certificate of Mortgages as required by law is waived and dispensed with by the parties, and all taxes due and exigible have been paid.
"Thus done and signed at my office __________ Louisiana on the day and date *Page 175 
above written, in presence of me, Notary, and the undersigned competent witnesses.
"Witnesses: H. L. Walker Zelma Walker Betsy Hubble, R. E. Walker Mrs. Perry L. McKenzie. Vera Kelley Hilda Coston Laura Williams C. E. Kerlin
(Seal) Lamar Polk, Notary Public."
On October 10, 1940, the vendee named in that instrument transferred all his rights thereunder to Frank Fitzgerald, who is a defendant in the case now before us. Fitzgerald subsequently moved in the necessary machinery and equipment and began to remove gravel and sand from the property, for which he paid royalty on the gravel at the rate of four cents per yard and in a total amount at the time of the trial of $3,441.46.
On April 13, 1942, plaintiffs, for the consideration of $100.00, executed a sale (or lease) of sand and gravel covering approximately six acres of land adjoining the eighty acres described in the 1939 instrument. This instrument was similar, except as to land description and the substitution of $100.00 for $25.00, to the July, 1939 document covering the eighty acres, and the two will be considered together in this opinion.
On March 23, 1942, plaintiffs' attorney wrote a letter to defendants advising them that the gravel operations were unsatisfactory; that timber had been damaged; advising defendants that the lease was such that same could be terminated at the will of plaintiffs and notifying defendants that it was the desire of the landowners that the lease be terminated and that their equipment be removed.
On April 14, 1942, plaintiffs signed a document addressed to defendant Fitzgerald and reading as follows:
"April 14th, 1942.
"Mr. Frank Fitzgerald, Glenmora, Louisiana
"Dear Sir:
"The undersigned as co-owners of the E 1/2 of NE 1/4, Section 7, T. 5 N. R. 1 W., Grant Parish, La., do hereby recognize your ownership in and to the sand and gravel on and under the said property in accordance with deed heretofore executed by H. L. Walker, et al, to Charles E. Kerlin, recorded in Conveyance Book 61, page 577, records of Grant Parish, La., and sale from the said Kerlin to Frank Fitzgerald, dated October 7, 1940, recorded in Conveyance Book 63, page 607, records of Grant Parish, La.
"The undersigned hereby agree that in the mining of sand and gravel from said property by you, settlement for royalties due under said sale shall be payable on the 15th of each month for the preceding month. All of the undersigned likewise agree that all royalties due hereunder shall be paid to H. L. Walker, subject to the conditions hereinafter set forth.
"So long as the royalties shall not exceed $40.00 per month, they shall be paid to the said H. L. Walker each month, and any month in which the Royalties due hereunder exceed the sum of $40.00, it is agreed that the first $40.00 shall be paid to the said H. L. Walker and any excess above said amount shall be applied by the said Frank Fitzgerald first on an indebtedness presently due and owing by the said H. L. Walker to the said Frank Fitzgerald, until said amount is liquidated. Thereafter, any excess over $40.00 each month shall be paid to the Federal Land Bank, or the Land Bank Commissioner at New Orleans for the account of the said H. L. Walker to apply on a mortgage presently on said property. When both of said debts are paid in full, thereafter the full amount of the royalties due hereunder shall be paid to the said H. L. Walker.
"Yours very truly,
H. L. Walker Mrs. Hilda Coston Laura Williams Vera Kelley Caesar Walker R. E. Walker Zelma Walker"
The record shows that plaintiffs and their father entered into negotiations with defendant Fitzgerald shortly after the *Page 176 
March 23, 1942 letter was written by their father and his attorney and reached the agreement evidenced by the April 14th letter.
The testimony shows that at the time this April 14th agreement was signed, defendant advanced $600.00 to pay off the Federal Land Bank mortgage against the property and agreed to pay $40.00 a month as royalty directly to plaintiffs' father before using the royalty for reimbursement of the $600.00 advanced on future royalties.
Plaintiffs' contention that the original transaction was void because it was based on insufficient consideration and potestative in character and had no fixed term has passed out of the picture for two reasons. First, lessee actually mined large quantities of gravel and the landowners accepted substantial royalties therefor. Secondly, after, by letter bringing up the issue that the original agreement was void, the owners executed the April 14, 1942 instrument ratifying the transfer of same by the original grantee to defendant Fitzgerald. Slack v. Riggs, 177 La. 222, 148 So. 32, and cases there cited.
The legal situation between the parties after the signing of the April 14th letter, and the advance by Fitzgerald of sufficient money to constitute a valid consideration, was to confirm and make valid the existing arrangement under which Fitzgerald was mining sand and gravel from plaintiffs' premises and to authorize the payment by Fitzgerald of the royalties as set forth in the letter signed by all the plaintiffs.
We consider it equitable to both plaintiffs and defendants to hold that the documents executed by the landowners are properly to be considered as leases rather than to constitute a sale of the sand and gravel to the grantee. This was the construction placed upon the instrument by the defendant who paid four cents per cubic yard royalty on the gravel from the very beginning of the operation on plaintiffs' land. This was the construction which had been recognized by both parties in 1942 when the defendants paid a substantial consideration to the landowners for the execution of the letter above quoted ratifying the original document.
Having determined that defendants' removal of sand and gravel from plaintiffs' land was in the nature of a lease, it follows that defendants should pay royalty for all materials removed from plaintiffs' land. The royalty for gravel was set in the instrument itself at four cents per yard. No royalty amount was set for sand. The District Court allowed four cents per yard, the same as set in the contract for gravel. The only evidence in the record is that of plaintiffs' witness, who testified that he was familiar with the price of sand and gravel in the vicinity and that "the usual price paid at operations for sand to the landowner" was two cents per cubic yard.
There is no evidence in the record that sand and gravel are of the same value. We therefore conclude that the value established by the record for sand is two cents per cubic yard.
Under the circumstances, it is not necessary for the Court, at this time, to determine under just what conditions the arrangement thus approved between plaintiffs and defendants can be terminated by plaintiffs. Sufficient for the decision in this case is it to hold that, since plaintiffs, for a substantial consideration, on April 14, 1942, approved the operations which had been carried on for several years prior thereto and specifically recognized defendant Fitzgerald's ownership of the sand and gravel and authorized him to continue to mine same subject to payment of gravel royalties as specified in that letter, and since plaintiffs neither alleged or proved that defendant was not complying with his obligations and neither alleged or proved that defendant had in any manner ceased to actively operate the gravel pit on plaintiffs' land in the manner contemplated by the parties at the time the April 14th agreement was entered into, plaintiffs were not entitled at the time of the trial to cancellation of their agreement with defendants. The record does not disclose what developments have taken place since the trial of the case, and in order to be sure that no injustice is done, we *Page 177 
have determined that a proper judgment on plaintiffs' demand to cancel on the the ground of lack of fixed term would be one of nonsuit.
For the reasons assigned, the judgment appealed from is amended by rejecting as of nonsuit plaintiffs' demands for cancellation of the sales or leases on the ground that same have no fixed term. The judgment is further amended by reducing the amount awarded plaintiffs from $1,680.00 to $840.00, and as amended, same is affirmed. Plaintiffs to pay costs of appeal; all other costs to be paid by defendants.
TALIAFERRO, KENNON, and HARDY, JJ., sitting.