FRUGÉ, Judge ad hoc.
This suit was filed by plaintiffs as the owners of two tracts of land in Ascension Parish, east of the Mississippi River, alleging damage growing out of defendants’ construction of a levee immediately adjacent to plaintiffs’ property. The damage in question was occasioned by the clearing of a 200-foot right of way for the levee being done by the removal of all trees, brush, etc., onto the adjacent properties, including the plaintiffs’ property.
The plaintiffs’ petition itemized the damages claimed as being $2,500 for the removal of brush, logs and debris, $300 damage to growing timber and $200 for damage to the land, or a total of $3,000 claimed.
The case was tried and judgment rendered, awarding plaintiffs damages in the amount of $350 for the written reasons expressed in the judgment itself. The judgment was rendered against L. P. Davis, Jr. only, because the evidence on the trial showed that L. P. Davis Construction Company, the other defendant, had not in fact been the construction company to whom the levee contract had been originally issued. Plaintiffs appeal to this court urging a grossly inadequate award of damages. Defendant, L. P. Davis, Jr., filed a motion to dismiss this appeal on the grounds that this court is without jurisdiction because *840 of the amount originally prayed for in plaintiffs’ petition being in excess of $2,-000. And, in addition tO' that, defendant has also filed an answer to plaintiffs’ appeal asking that the judgment of the District Court be reversed and judgment rendered in favor of defendant and in the alternative that the judgment be affirmed.
We will first discuss defendants’ motion to dismiss the appeal. The motion is based on the assumption that the sole test with regard to the jurisdictional limit of this court is the property damage or trespass suit such as this is the amount originally prayed for in plaintiffs’ petition. Such is not the case. The most recent expression on that point by the Supreme Court of Louisiana is in the case of Breaux v. Simon, 235 La. 453, 104 So.2d 168. The court held that in determining the question of jurisdiction the court is not bound by the allegation of the petition as to the amount but looks to the record to ascertain the actual amount in dispute. We have no hesitancy in stating that in this record the amount in dispute is way under the sum of $2,000, and therefore, this court has jurisdiction of this appeal. The motion to dismiss the appeal therefore is hereby rejected.
Plaintiffs allege that sometime between the months of January and July, 1951, defendants in the construction of the said levee, which parallels the northern property line of the two tracts in question, cleared the right of way for the said levee by dumping all of the logs, brush, trash and other debris from the levee right of way adjacent to plaintiffs’ property onto the two tracts owned by plaintiffs, rendering unusable a large portion of the property adjacent to the right of way, necessitating removal of large piles of the said trash; that in so dumping the said debris, a number of valuable trees on plaintiffs’ property were killed or damaged by circling with cables, and that the land itself was rutted up and plowed up in such a manner as to cause further damage to the property.
A careful review of the voluminous record in this case shows that there is no dispute as to most of the facts involved. The testimony in the record addresses itself largely to the value of the damages incurred.
The following questions or points at issue are undisputed: Plaintiffs’ ownership and possession of the land in question, its location, the clearing of the right of way in advance of the levee construction by the removal of all the timber, logs, stumps, brush, and other debris, from the levee right of way onto the property of the plaintiffs, L. P. Davis, Jr., being the person actually in charge of and who handled the construction of the levee, including the clearing of the right of way, that the other defendant, L. P. Davis Construction Company, Inc. was not the concern that had the contract for the levee, L. P. Davis Construction Company, a partnership concede that there is no liability as regards L. P. Davis Construction Company.
In view of the fact that there is no dispute in the evidence as regards the above listed points, the only question remaining to be determined is the issue of the question of damages only.
The trial judge said in part:
“Plaintiff, W. I. Powers, testified that he went down to look at the property sometimes between June and the latter part of August, 1951 and it was then he discovered that some logs and debris had been put on the land herein above described. He testified that he counted 13 large piles of logs and 43 trees that had been damaged by the use of cables. He also testified that he had taken pictures showing this during the first part of January, 1952. His testimony is that the trees damaged by cables measured anywhere from 6 to 8 inches from the top to about 14 to 18 inches.
“Plaintiff, W. I. Powers, did not give any testimony as to any estimate or amount of damages claimed.
*841 “The witnesses who testified for plaintiff giving estimates of the damages claimed were Joe Sheets, Frank Savoy, A. P. Savoy and A. C, Smiley. All of their estimates were made by going on the property just a few days prior to the trial of the case in January, 1953, which was more than two years after the work had been completed. I am well acquainted with all these gentlemen and, in my opinion, Mr. Smiley is the only one who was really competent to give testimony concerning the value of timber and he declined to give any testimony with reference to damage to the trees, saying this was out of his line and that he didn’t handle those things. He further testified that they were small trees and that he didn’t know their value. He did testify that there were some large trees damaged (but he didn’t say how many) and that they would run about 300 feet per tree. He further testified that there were about 41 trees scarred but that they were not lost. He further testified that he didn’t figure the amount in dollars and cents; he then was given some paper and a pencil and figured the amount to be $147, approximately. He also stated that he would not move the log piles for $150 per pile, but when asked if it would cost more he stated he wouldn’t know; he went on to say that maybe a man would be equipped where he could move it easier than that. He stated that the log piles were on the average of 40 or 50 feet from the levee, and when shown pictures, he stated that they didn’t look exactly like that now because the piles had gone down plenty. * * *
“Gus Lass testified as a witness for the defendant stating that he was 62 years old and that he had been in the timber business for a number of years. He stated he counted 4 piles of logs on one tract and 7 on the other. He further testified that these logs would rot away and do good to the land. He also testified that the logs and debris could be removed from the Powers’ land in about 10 days with 3 or 5 laborers paying each one 75‡ per hour plus $100 for his services and that he would be willing to contract to move on that basis.”
The damage to the timber lying in these small strips of land is not the major item at issue. The trees appeared not to be merchantable and the main source of value to the timber is of the future or anticipated value of young timber. The testimony in the record (counting the number of trees and the value thereof and the number of logs) satisfies us that the amount of $147 would be adequate award for damages for the trees. With respect to the debris on plaintiffs’ land, there is testimony in the record even by witnesses for the defendant that there were seven piles of logs and debris on one tract of land and four piles on the other making a total of eleven. There being no doubt of the trespass, there is no doubt that plaintiffs were entitled to the removal of these logs and debris from their property. The testimony on the cost of removal varies. One witness for the plaintiffs stated that he would not want the job at $150 per pile. Mr. Gus Lass, a witness for the defendant, stated that he would undertake the job for $100 for his own services plus 75<ji per hour for three or four laborers and that he could do the job in ten days. Of course, this latter witness was testifying to conditions of these piles two years after the occurrence of the trespass and it stands to reason that during these two years there must have been some decay and deterioration of the material deposited on plaintiffs’ land. If we should accept the computation of the witness for the plaintiff, the amount of damages for the removal of the debris would amount to at least $1,750 whereas, if we relied on the witness Lass who testified on behalf of the defendant, the damage would be $400. The latter figure is arrived at by considering *842 that five men working eight hours each, totaling forty hours per day at 75‡ an hour, coming to $30 per day. And as stated by the witness, if he could remove same in ten days, it would amount to $300 plus the $100 to the foreman, making a total of $400. We believe a more realistic computation of the actual cost of removing this debris would be between the two estimates given by the witnesses at $60 per pile which would total $660. We think that plaintiffs are entitled to the award of these damages because we believe that it would be that costly to remove the debris from plaintiffs’ land. We reject the item of damages to the land. In order to arrive at the total award here, by adding $147 for the value of the timber, the total judgment for damages in this case should be $807.
For the above and foregoing reasons assigned, the judgment of the trial court is hereby amended to provide for a total award in damages for the sum of $807, and that in all other respects the judgment appealed from is affirmed.
Amended and affirmed.